IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

SAVE R HOOD, INC.

                                         CIVIL ACTION NO. _____

V.                                         JURY

GALVESTON COUNTY AND
CITY OF GALVESTON

### PLAINTIFF, SAVE R HOOD'S, ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Save R Hood, Inc., files this, its Original Complaint against Galveston County and City of Galveston, hereinafter sometimes referred to as Defendant(s). Plaintiff seeks damages for the hereinbelow complained-of civil/constitutional wrongs by the Defendants, in context of Defendants' unlawful and unconstitutional appropriation of certain real property owned by Plaintiff, and destruction of valuable improvements on the property during Defendants' period of appropriation.  Plaintiff respectfully submits to the Court as follows.

## I.    PARTIES

1.    Plaintiff, Save R Hood, Inc., is a nonprofit corporation, as that term is defined under State and federal law, and is domiciled in the State of Texas.

2.     Defendant Galveston County is a governmental entity and collects ad

valorem taxes for itself and various other taxing entities, City of Galveston and the

Galveston Independent School District.  Galveston county may be served by

serving the **County Judge, (Mark Henry), at Galveston Courthouse**

**Courthouse, 722 Moody Avenue, Galveston, Texas 77550**.

> The website for the County explains:
>
> The Galveston County Tax Office (GCTO) assesses, collects, and disburses
> property taxes for nearly half of governments in the county (see listing
> below).  This means you may receive multiple tax statements from various
> tax collectors.  The full list of governments taxing you may be found at
> the Galveston Central or Harris County Appraisal Districts.  The CADs also
> provide a listing of tax collectors for each local government along with
> contact information.

3.     City of Galveston is a governmental entity located in Galveston, Texas, and

may be served by serving the **City Secretary (Janelle Williams) at 823**

**Rosenberg Street, Galveston Texas 77550.**

4.     The subject property is located in the City of Galveston, County of

Galveston; all parties are domiciled in Galveston County, Texas.

## II.     JURISDICTION AND VENUE

5.     This Court has original jurisdiction pursuant to 42 U.S.C. § 1331, which

provides for "original jurisdiction of all civil actions arising under the Constitution,

laws, or treaties of the United States."

6.      Jurisdiction vests under 42 U.S.C. § 1343: "original jurisdiction of any civil action authorized by law [….] (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, or any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

7.      Jurisdiction vests under the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983.

8.      This Court has pendent and supplemental jurisdiction over Plaintiff's claims arising under state law, regarding how property may be taken.

9.      All matters attendant to and referenced in this lawsuit occurred in Galveston County, Texas.

10.     The subject property lies in the City of Galveston, County of Galveston Texas, venue is proper in this Court.

## III.   STATEMENT OF FACTS

11.     On January 18, 2008, Defendants County of Galveston and City of Galveston filed suit against Plaintiff, Save R Hood, in the 212th Judicial District Court of Galveston County, Texas, cause number 08-TX-0081, styled *Galveston County, et al. v. The Unknown Owners, Shareholders, Successor-in-Interest and/or Legal Representatives of SAVE R Hood, Inc., et al*.

12.     Despite the way Defendants captioned the suit, there were no "unknown" parties of interest.  At all times relevant to the events giving rise to the instant suit, Plaintiff's board members and managerial office-holders were identified in the public record, on file with the Texas Secretary of State.

13.     The taxes assessed by Defendants County of Galveston and City of Galveston against Plaintiff, forming the basis for that suit, were not permitted by law, as Save R Hood had qualified as a tax-exempt organization with the federal Internal Revenue Service, and had also been exempted from assessment of property taxes by Defendants, pursuant to Texas Tax Code § 11.18 and § 11.43.

14.     The tax master set a final hearing date in the case of June 15, 2009; Defendants did not provide notice to the Plaintiff of this setting.

15.     Nevertheless, on June 15, 2009, judgment was rendered in favor of Defendants Galveston County and City of Galveston, granting Defendants the right to seize and sell the subject property.  The legal description of the subject property is as follows:

> LOT ELEVEN (11), BLOCK THREE HUNDRED EIGHTY-SEVEN (387), IN THE CITY AND COUNTY OF GALVESTON, TEXAS, SAID PROPERTY MORE PARTICULARLY DESCRIBED IN THE INSTRUMENT RECORDED AT FILM CODE #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 IN THE OFFICER DEED RECORDS OF GALVESTON COUNTY, TEXAS.

16.     It is Plaintiff Save R Hood's belief that it paid taxes and costs as (unlawfully) assessed by Defendants, after suit was filed, and prior to January 5, 2010.

17.     Nevertheless, on January 5, 2010, Defendants offered the property for sale at a sheriff's sale; the property was struck off to Defendant Galveston County at that time.

18.     The total amount Defendants alleged was due and owing, according to the return of sale filed into the record in the suit, was $17,645.93.

19.     On June 11, 2015, Defendant Galveston County sold the property at sheriff's sale a second time, to 2013 Place LLC.

20.     Five years after the second tax sale – and a decade after its initial unlawful appropriation of the property - Defendant Galveston County filed a "Petition to Vacate Sheriff Sale" in Galveston County District Court (in the original delinquent tax suit, referenced *supra*, Cause Number 08-TX-0081; Petition filed on July 23, 2020).

21.     Defendant Galveston County alleged "subsequent to the January 5, 2010 sheriff's sale, a representative of Save R Hood invoked the statutory right of redemption by tendering sufficient funds to Galveston County Tax Office." Defendant alleged that, because a record of redemption was never filed in the deed records, record title had remained vested in Defendant Galveston County.

Accordingly, "the Property was erroneously offered for public auction at a sheriff sale conducted June 2, 2015.  This auction resulted in the property being sold to 2013 Place, LLC[.]"

22.     Defendant Galveston County provided that it had issued "another certificate of redemption" and recorded it in the Galveston County Real Property Records.

23.     Said "certificate of redemption" was executed on July 15, 2020, over a decade after the January 5, 2010 sheriff's sale, and recorded on July 22, 2020; the document provided that the property had been redeemed, stating "[o]n the 15th Day of December 2010, funds totaling $13,089.41 (Thirteen thousand Eighty-nine and 41/100 Dollars) were tendered in compliance with Texas Property Tax Code § 34.21[.]"

24.     The date provided in Defendant's reconstructed certificate is incorrect; Plaintiff paid taxes and fees assessed by Defendants prior to the date cited in Defendant's post hoc certificate.

25.     Defendant Galveston County filed a second "Petition to Vacate Sheriff Sale" on July 24, 2022.  This document appears to be substantively identical to the first Petition, which had been filed the previous day (July 23, 2022).

26.     Texas Tax Code § 33.56 allows a taxing entity to file a petition to vacate a judgment, for failure to join a necessary party; failure to serve a necessary party; failure to adequately describe property the subject of suit; or due to the property

subject to suit having been subject to multiple appraisals for the years included in the tax suit.

27.    None of the grounds listed in § 33.56 was applicable or relevant to either of Defendant Galveston County's petitions to vacate.

28.    Defendant Galveston County's petitions to vacate did not seek vacation of a judgment; rather, they sought to vacate a sheriff's sale, which is not permitted by the statute.

29.    Texas Tax Code § 33.56 further mandates that the purchaser of the property must consent to a petition to vacate, either by written memorandum signed by the purchaser and filed in the record; joinder in the petition; a statement made in open court at a hearing on the petition; or the purchaser's signature of approval to an agreed order to grant the petition.

30.    The purchaser of the subject property did not consent to the petition to vacate as required by law.

31.    The impropriety of Defendants' petitions to vacate shows that Defendants had knowledge of the illegality of their actions.

32.    On July 27, 2020, judgment was signed by the district judge, granting Defendant Galveston County's petition to vacate; the judgment vacated the June 2, 2015 tax sale; and title to the property was adjudged to be "restored in the former record title owners."

33.    The "former record title owner" was Defendant Galveston County.

34.    Defendant Galveston County was not authorized by law to file its petition to vacate; and even if it were, it did not comply with statutory mandates regarding consent of the purchaser; any judgment purporting to restore title to former owners of record was therefore void.

35.    Further, assuming *arguendo* that the judgment was valid, it served only to transfer title back to Defendant, Galveston County, who was the record title owner at the time of the June 2015 sheriff's sale.

36.    Accordingly, Defendant's petition to vacate notwithstanding, either Defendant or its transferee, yet remains the record owner of the subject property.

37.    The practical effect of Defendant's petition to vacate, while holding out the appearance of an attempt to remedy its wrong by vacating the sale, was only to give the property back to itself.

38.    Demonstrating its intent to conceal its actions and transfer title back to itself, Defendants did not serve Plaintiff with notice of either of the July 2020 petitions to vacate.  Defendants did not provide Plaintiff with notice of the July 27, 2020 judgment ostensibly transferring title back to Galveston County.

39.    Defendants then filed suit for delinquent taxes on the property on April 13, 2022, naming 2013 Place, LLC as defendant.  That suit is captioned *Galveston*

*County, et al. v. 2013 Place, LLC*, #22-TX-0146, in the 10th Judicial District Court, Galveston County, Texas.

40.     Defendants alleged in that suit that were taxes due and owing on the property, as of April 13, 2022, in the amount of $13,840.65.

41.     Demonstrating their intent to unlawfully take the property, Defendants sued an entity (2013 Place, LLC) from whom they had ostensibly recovered title.

42.     Defendants knew that 2013 Place, LLC no longer had an ownership interest of record, at the time of filing suit on April 13, 2022.

43.     Defendants knew that the property had been taken unlawfully from the Plaintiff, at the time of filing suit on April 13, 2022.

44.     Defendants had sought - and obtained - a judgment vacating the sale to that 2013 Place, LLC – the effect of which placed the parties in a position as though the sale to that entity never took place – almost a year prior to filing suit on April 13, 2022.[1]

45.     In other words, Defendants have been the record owners of the property since January 5, 2010.

46.     No taxes are due and owing on the property.

---

[1] Plaintiff notes here that any and all transfers of property by Defendants, beginning with the first scheduled sale in January 2010, have been void as a matter of law.  References to the Defendants' ownership/status relating to the property herein refers to such ownership/status as it is reflected on the face of the documents of record in Galveston County.

47.    No taxes were due and owing on the property at the time Defendants filed suit in January 2008.

48.    Nevertheless, Plaintiff paid taxes as assessed by Defendants after suit was filed in January 2008.

49.    It is Plaintiff's belief that taxes assessed by Defendants were paid by Plaintiff prior to the January 5, 2010 sheriff's sale, and therefore, also prior to the subsequent sheriff's sale in 2015.

50.    As a result of the judgment vacating the 2015 sheriff's sale, Defendants have been the record owners of the property since January 5, 2010.

51.    Defendants' assessment of taxes on the property after January 5, 2010, is invalid as a matter of law.

52.    Defendants have assessed taxes against themselves.

53.    Defendants have not only assessed taxes; they have burdened the property with special assessment liens.

54.    These special assessment liens are for work ostensibly done on the property by the Defendants.

55.    To the extent that any such work was actually necessary and actually performed by Defendants, it was necessary only due to Defendants' egregious neglect of the property.

56.     By encumbering the property with unlawfully assessed debt, Defendants attempt to further cover its unlawful appropriation of the property and hinder Plaintiff from attempting to recover the property and damages Plaintiff is owed.

57.     Defendants did not provide Plaintiff with notice of the tax foreclosure suit which it filed on April 13, 2022.

58.     Defendants' conduct in filing this second lawsuit shows their knowledge of the illegality of their actions.

59.     During the twelve and a half years since Defendants' appropriation and occupation of the subject property, they allowed the buildings on the property to fall into disrepair.  After years of neglect and damage, Defendants demolished and removed the buildings from the property.

60.     Defendants permitted accumulation of litter and waste on the property, and prior to destruction of the buildings, permitted occupation by vagrants.

61.     At the time of Defendants' unlawful taking of the property in 2010, said building was worth roughly $250,000.00.  Current market value for the building would be approximately $750,000.00.

## IV.    VIOLATION OF PLAINTIFF'S RIGHTS

62.     Defendants violated Plaintiff's Fifth Amendment rights against deprivation of property, without compensation and without due process, in the following respects:

A.     assessment of taxes on a tax-exempt property;

B.     seizing the property after assessed taxes had been paid;

C.     failing to return the property to the Plaintiff after assessed taxes had been paid and/or after redemption of the property, a *per se* taking;

D.     selling the property to a third party, a *per se* taking;

E.     failing to maintain Plaintiff's property, allowing it to fall into disrepair;

F.     destroying valuable improvements to Plaintiff's property;

G.     seeking to vacate the unlawful sale of the property to a third-party;

H.     transferring record title back to themselves, by virtue of an judgment vacating sale to a third-party;

I.     failing to provide notice to Plaintiff of its petitions to vacate;

J.     assessing taxes against the property during the period-of-time in which Defendants claimed ownership of the property;

K.     undertaking to commence work on the property without providing any notice to Plaintiff;

L.     assessing liens against the property for alleged work to remedy conditions which Defendants had created, due to severe neglect, and without providing notice to Plaintiff;

M.     filing suit for taxes not due and owing;

N.      naming a non-owner party, without any ownership interest in the

property, as the sole defendant in said suit for taxes which are not

owed;

O.      failing to provide Plaintiff with notice of suit;

P.      continuing to act as sole owners of the property, and failing to

appropriately remedy their illegal taking of Plaintiff's property.

## V.    DAMAGES

63.    Defendants should be jointly and severally liable herein for the unlawful and

unconstitutional taking of Plaintiff's property. Plaintiff sues for the following:

A. Return of clear title to the property, including removal of any and all

monetary liens of any kind by Defendants.

B. Reimbursement for any and all amounts improperly assessed to Plaintiff

by Defendants and paid by Plaintiff.

B. A reasonable amount of money surrounding the loss of the use of the

property for development purposes – opportunity cost - $500,000.00.

C. The reasonable cost associated with replacement of the buildings which

were taken and destroyed - $500,000.00 - $750,000.00.

D. Reasonable and necessary attorneys' fees associated with Plaintiff having

to bring this lawsuit, including research, litigation, trial etc.

E. Costs of court.

F. Pre-judgment and post-judgment interest.

G. Any and all relief to which Plaintiff may be deemed entitled, whether in

equity or under law.

DATE:  July 24, 2022.

Respectfully Submitted By:

/S/ ELLYN J. CLEVENGER
_____
Ellyn J. Clevenger
Federal I.D. No. 3597745
Texas Bar Roll No. 24058662
1115 Moody Avenue
Galveston, Texas 77550
409.621.6440
ellynclevenger@gmail.com

**A JURY TRIAL IS DEMANDED**